UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KI SOK CHUNG, BYUNG O. CHUNG, OK HYUN NOH a/k/a OK HYUN LEE, HEE KEE NOH, SOON DUK KIM a/k/a SOON DUK PARK, DAE SHIK KIM, MYONG HEE KIM a/k/a MYUNG HEE KIM, YUN SANG KIM, ONE HO KIM, CHANG SOOK KIM, HYO SIM LEE, SU YOUNG LEE, SEONG HEE KIM a/k/a SONG HEE KIM, SAM YOUNG CHOI, YOUNG CHOO YU, CE CHOONG YI, SUNG AEE KIM a/k/a SUNG AEE YANGKIM, MIN HYUN KIM, MI HWA LIM a/k/a MI HWA KIM-LIM, PYONG HEE KIM, JUNG ZI WEN a/k/a WEN JUNG ZI, DUK SOO KWON, GUN HEE YEO and JIN HWA JANG a/k/a JIN MWA JONG | |
| Plaintiffs | CIVIL |
| VS | 302CV812 (AWT) |
| NICHOLAS CERRONE and TRACY A. CERRONE | |
| Defendants | FEBRUARY 25, 2004 |

**DEFENDANTS' MOTION TO DISMISS PURUSANT TO RULE 37**

Pursuant to the provisions of Federal Rule of Civil Procedure 37(b)(2)(C), the defendants in the above-captioned matter hereby move to dismiss the plaintiffs'

1

entire cause of action for the plaintiffs' ongoing, blatant refusal to comply with prior court orders regarding basic discovery in this case. The defense also seeks additional sanctions for the considerable waste of time brought about by the plaintiffs' refusal to answer simple interrogatories filed in this case more than one year ago, despite a clear court order to do so.

I. <u>FACTS</u>:

There are presently twenty-five plaintiffs of Korean dissent named in the complaint. Thirteen of these plaintiffs have alleged various personal injuries arising out of an auto accident which occurred while they were riding in a van on their way to work on May 18, 2000. Twelve plaintiffs have alleged loss of consortium only.

(i) **Personal Injury Claims**

On August 30, 2002 the defendants served the plaintiffs' attorney with interrogatories and production requests directed to each of the plaintiffs alleging to have sustained personal injuries. These interrogatories requested very basic information, such as a list of each injury sustained, a list of medical special

damages, and a query as to which of the medical bills have been paid by insurance. The interrogatories also asked each plaintiff to identify any permanent injury, and to identify the physician or medical provider who assigned the permanency rating. The defense also asked the plaintiffs to identify any experts.

In response to these discovery requests the plaintiffs' attorney provided the defense with grossly incomplete answers. The plaintiffs refused to provide an itemized list of their special damages, or even a total amount of their medical bills. The plaintiffs refused to identify which of their bills have been paid by insurance and which remained outstanding. The plaintiffs failed to indicate whether any of their injuries were permanent, stating "I am not a doctor."

With respect to the production requests, the plaintiffs produced approximately eighty medical authorizations, and told the defense to try and obtain the records from various doctors and clinics throughout New York. Although the defense requested employment records and tax returns in order to evaluate whether the plaintiffs' injuries kept them out of work, no such documents have ever been provided, nor have authorizations been given to obtain these records. The only

medical records provided to date have been initial records from Norwalk Hospital on the day of the accident, records from shortly after the accident from Park's Pain Clinic, and an affiliated chiropractor, as well as MRI reports from several radiology centers in New York. The great majority of these records concern treatment pursued within three months of the accident. Although the complaint alleges ongoing injuries and debilitation, no recent treatment records have been provided.

The plaintiffs' attorney also provided multiple authorizations to obtain the plaintiffs' no-fault files from New York. Although the defense sent out voluminous record requests with both the medical authorizations and the no-fault authorizations, most of these were either ignored or returned by the Post Office with an indication that the address provided on the authorization was incorrect.

Without the ability to ascertain the amount of medical bills for each plaintiff, the nature of any collateral source credit available, whether there was any permanent injury, and whether there was ongoing medical treatment after 2000, it was virtually impossible for the defense to evaluate these claims, or to even take meaningful discovery depositions.

4

After numerous informal requests to plaintiffs' counsel for complete answers to interrogatories and production requests were ignored, the defense filed a motion to compel on December 3, 2002. That motion was denied without prejudice by the court (Martinez, J.) on December 16, 2002, with instructions for counsel to conference in order to try and work out any disagreements without the need for court intervention.

Thereafter plaintiffs' counsel agreed that he would provide additional information. However, instead of proving meaningful, coherent answers to interrogatories and requests for production, the plaintiffs again provided duplicate copies of records already produced, along with more authorizations. This was completely unsatisfactory to the defense, and a second motion to compel was filed on April 16, 2003. That motion was also denied by the court (Martinez, J.) on May 12, 2003, with instructions that any future motion had to include a memorandum of law reciting each item of discovery still outstanding, and to provide the court with copies of the discovery requests at issue as exhibits.

On May 15, 2003 the defense renewed the motion to compel, and provided the court with a memorandum of law and copies of all of the interrogatories and production requests received to date. On July 16, 2003 the motion to compel was granted by the court, and the plaintiffs were ordered to provide discovery compliance within ten days.

In response to said order the plaintiffs produced no additional information or records of any kind. On August 1, 2003 the defendants filed a motion to dismiss the case for ongoing failure to provide discovery and/or to comply with court orders pursuant to Federal Rule of Civil Procedure 37.

On August 28, 2003 the court (Martinez, J) issued on order, compelling all of the plaintiffs and counsel to appear for a hearing on September 8, 2003. At said hearing the court spent considerable time and effort to go through the interrogatories and production requests at issue. Before the end of the hearing the plaintiffs' attorney was ordered to immediately provide answers to all outstanding interrogatories, and to produce any undisclosed medical records by hand delivering same to defense counsel.

On January 16, 2004 plaintiffs' counsel delivered to the undersigned multiple MRI films,[1] along with a huge box of records, containing approximately 1600 pages. Although plaintiffs' counsel had made an appointment to meet with the undersigned to review these records at 11:00 a.m., he did not show up until approximately 12:30, and there was not enough time to go through the records because of a deposition scheduled to take place in another case that afternoon. Plaintiffs' counsel represented that complete compliance was provided, and left.

After sifting through the plaintiffs' latest compliance, it has become apparent that what was provided was a copy of each plaintiff's no-fault file, and the initial treatment records previously provided in earlier disclosure. No supplemental answers to interrogatories were provided. The plaintiffs produced no list of special damages, no indication as to what bills have been paid by insurance, no meaningful expert disclosure, no disclosure of permanent injury, no employment records, no tax records, no indication as to whether they had been a party in any prior lawsuits,

---

[1] Although plaintiffs' counsel represented at that time that he was producing copies of all MRIs, a comparison of the written records with the films indicates that several MRI films purportedly

7

and failed to indicate when they first consulted with an attorney after the accident. Although this information was originally requested by the defense more than eighteen months ago, in August, 2002, it has yet to be provided for any of the thirteen people claiming personal injuries as a result of the accident.

Given that the defense has already filed three prior motions to obtain such basic information as a list of medical special damages, but has yet to receive same, these claims should be dismissed. At the very least, the plaintiffs should be precluded from offering any evidence at trial that goes beyond the medical records thus far disclosed, and should be prohibited from claiming permanent injury, future surgery, or presenting expert testimony of any kind. They should also be precluded from claiming any lost wages or inability to perform at work, as no employment records or tax returns have been provided.

**(ii) Loss of Consortium Claims**

On September 27, 2002 the defendants also filed seven interrogatories and four production requests directed to each of the twelve plaintiffs alleging to have

---

showing injuries caused by the accident have not been produced, thus preventing an independent

8

suffered loss of consortium. Despite filing three motions to compel, the plaintiffs had failed to respond in any fashion to any of these discovery requests. Each of the plaintiffs claiming loss of consortium were ultimately ordered to appear at the hearing held before the court on September 8, 2003.

Two of the individuals claiming loss of consortium failed to appear at the hearing held on September 8, 2003 as ordered by the court, and there was a ruling from the bench that two of the claims were being dismissed. With respect to the remaining claims presented by ten plaintiffs for loss of consortium, the plaintiffs' attorney was ordered to answer all interrogatories and production requests immediately.

At the meeting on January 16, 2004 plaintiffs' counsel produced partial discovery compliance provided by the ten remaining claimants. However, each set of discovery requests remains incomplete or inaccurate. For instance, although most of the plaintiffs identified children, no address was provided for the children as requested by the defense. Each plaintiff indicated that the children lived at the

---

medical review from taking place.

same address as the parents', which is highly improbable for all ten couples, some of whom are old enough to have children over age eighteen. More importantly, all of the plaintiffs' failed to provide a meaningful response to interrogatory number 4, which asks for a list of all activities impacted in the marriage as a result of the accident. Each plaintiff provided the same form, meaningless response: "plaintiff has been deprived of the consortium of his wife, including but not limited to his services, his love, companionship, affection and society, loss of physical relations and solace, loss of contribution and income and restriction of social activity."

This form response was specifically ruled unacceptable by the court at the hearing on September 8th, and each plaintiff was ordered to provide a specific, meaningful list of activities impacted by the accident. That order was completely ignored.

In addition, although each plaintiff has indicated that the loss of consortium includes "loss of contribution and income," in response to interrogatory number 4, no employment records have been provided as requested in production request number 2. The plaintiffs have also failed to answer interrogatories asking about

marriage counseling or divorce, and have also failed to provide proof of service as requested in production request number 4. Finally, although the plaintiffs have provided the defense with several pages of documents that appear to be in Korean, no legible marriage certificates have been provided as requested in production request number 1.

## II. LAW AND ARGUMENT:

Federal Rule of Civil Procedure 37(b)(2)(C) clearly provides the court with the authority to dismiss the action of any disobedient party for failure to obey a court order or to provide discovery. Said rule also provides the court with broad discretion with respect to lesser penalties, such as refusing to allow the disobedient party to support designated claims, or introducing designated matters into evidence. Given the clear record of abuse by the plaintiffs, the court should dismiss these claims in their entirety. At the very least, the claims should be limited to the treatment disclosed to date. If any of the plaintiffs have sought additional treatment but failed to disclose it, they should be prohibited from doing so later in

the case. We are now almost four year post-accident, and any such treatment should have been disclosed long ago.

In addition to their failure to properly respond to expert disclosure requests contained in the defendants' interrogatories, the plaintiffs have failed to disclose any experts as previously ordered by the court. The court issued a scheduling order on October 14, 2003 requiring the plaintiffs to disclose all experts by no later than February 14, 2004. No such disclosure has been provided.

As a result of the plaintiffs' failure to provide meaningful answers to discovery, the defense has been unable to depose the plaintiffs. It is not acceptable to attempt depositions without a prior opportunity to examine medical records in order to prepare a line of inquiry. This is especially so in this case, which involves many plaintiffs that do not speak English and will require an interpreter. Thus, although the court's scheduling order requires that all discovery be completed by no later than May 17, 2004, nothing has been accomplished.

Rule 37(b)(2)(E) also provides that the court shall require the party failing to obey the order or the attorney advising that party or both to pay the unreasonable

expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that circumstances make an award of expenses unjust. To date the defense has been required to file three separate motions, along with voluminous exhibits, just to get an order from the court compelling the plaintiffs to provide the most basic forms of discovery. Despite an order to provide this information within ten days issued on July 16, 2003, and a subsequent two hour hearing on held on the record on September 8, 2003, followed by another order to answer every outstanding interrogatory and production request and to hand-deliver the compliance to the defense, the plaintiffs have failed to provide the defense with amended answers to a single interrogatory, or to otherwise provide the requested information. Instead, the plaintiffs' attorney again produced 1600 pages of largely duplicative records obtained from the plaintiffs' no-fault insurer.

This egregious conduct should not be tolerated any longer. The plaintiffs' case should be dismissed. The plaintiffs' attorney continues to inquire about possible settlement, but does not want to put in the time and work necessary to

organize these claims so as to provide proper discovery compliance. It would be difficult to manage all of these claims with proper compliance; it is impossible to do so given the lack of information provided to date by the plaintiffs. This is not fair to the defendants, who have a right to evaluate the claims being made against them. The plaintiffs can not possibly present a justifiable reason for their continued misconduct this late in the proceedings, and their case should be dismissed with prejudice.

THE DEFENDANTS

By _____
JOHN W. MILLS
MURPHY and KARPIE
350 Fairfield Avenue
Bridgeport, CT 06604
Tel: (203) 333-0177
Facsimile: (203) 333-8475
Federal bar No.: ct11706

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, U.S. Mail, postage prepaid on February 25, 2004 to:

>Victor M. Serby, Esquire
>350 Fifth Avenue, Suite 6305
>New York, NY  10118
>
>Clerks Office
>U.S. District Court
>450 Main Street
>Hartford, CT  06103

_____
JOHN W. MILLS